Good morning, Your Honor. Jehan Thomas on behalf of Winnie v. Ridgiana. This case comes to the courts on three issues. One year deadline filing for the asylum application as a result of the ineffective assistance from the extraordinary circumstances. Also, the unaccountable harm that was suffered by petitioner Winnie v. Ridgiana and past persecution. This court in Ramadan v. Gonzales held that this court has jurisdiction over the unfounded filing if there is a mixed question of long fact. And this fact has to be undisputed and established on the record. Petitioner asserts that the facts necessary for this court determination has been established in our respect. She has entered the United States on January 30, 2001. She retained an immigration consultant, a certified court interpreter, four months from her entrance, specifically on May 2001. Mr. Mawaya did not hold himself to be an attorney. However, he had an advertisement in the Indonesian magazine, holding himself to be a specialist in filing both asylum application, visa extension, and documents on behalf of the Indonesian community. Petitioner paid Mr. Mawaya 1,300 for the legal services. She maintained contact with Mr. Mawaya to demand a status on her application all the way up to March 2002. Petitioner provided an affidavit attested to the agreement between her and Mr. Mawaya. Let me ask you this question. Your claim really is based on the fraud of the notario. Do we – what cases are there that might be helpful? Your Honor, there are two cases by this court that I have. It is Farjado v. INS, and there is Varela v. INS, and also Lopez v. INS. The immigration judge discounted Lopez v. INS because the immigration consultant did not hold himself to be an attorney. But we don't see the difference because in both cases, the immigration consultant has held themselves to have the speciality in filing the legal documents. You see no distinction between an immigration consultant and an immigration attorney? No, Your Honor. I don't see the distinction between in Lopez v. INS where the immigration consultant held himself to be an attorney versus in the current case where the immigration consultant has held himself to have the expertise to file the legal documents. In both cases, Lopez and my client relied on this fraudulent representation. In Lopez, did he claim to be an attorney? In Lopez, the immigration consultant claimed to be an attorney. Yes. He did. Here, the notario didn't claim to be an attorney. No, he did not. However, he had an advertisement in a magazine holding himself to have the expertise. You're really saying equity demands. I mean, this lady did everything that one should expect. That is correct, Your Honor. And when she saw that it wasn't working out, she ran to an attorney as quickly as ever she could. She paid $1,320. That is correct. The immigration judge found her to be a credible witness, yet discounted her testimony that the immigration consultant filed for her asylum application because he held. She didn't have a contract with him, and the asylum application was not filed with the service. Well, in fact, if the asylum application was filed with the service, as the immigration judge required, then there would be no claim for ineffective assistance of counsel. And normally, an immigration consultant who is a fraudulent is not going to provide a contract demanding his expertise and his obligation to that person that he's going to be filing with. Also, the immigration judge and the board found that a petitioner did not act in due diligence. But the petitioner in this case has acted in complete due diligence. Four months from her entry, she has retained that immigration consultant. She maintained contact with him every week to ask the status of her case. He gave her five scheduled appointments to show up, and on each scheduled appointment, he never shows up and says he cannot see her. In March 2002, it became to her mind that she is cheated, and thus she consulted with an attorney and filed her application immediately within one month, which is April of 2002. Now, what you're asking us to do is to find that her asylum application is timely and send it back for the agency to determine the case on the merits? That is correct. But I'm also asking this Court to find that the harm that she suffered was on account in part of her visible Chinese ethnicity. Both the immigration judge and the board found that the harm was because of a criminal intent, and the board found it to be a robbery. However, that is not — this is a pre-real ID act, and mixed motive is sufficient on this Court precedent, and even to confirm that the prisoner was attacked on account of her visible — after the taking of her wallet. Now, did the agency determine this on alternate bases? First, that it was untimely, and second, if it were timely? That she didn't show that the harm was on account of? Uh-huh. And the reason I'm saying it was on account of is it is because after subsequent to the taking of the wallet and the money, they dragged her off the bus in an attempt to possibly rape her, because she was an ethnic Chinese at the time. And in a way, that's what I'm saying, that that's confirmed that at least the harm was in part of her Chinese ethnicity. The next issue that I want also this Court to resolve is the past persecution issue, because Patricia did suffer an injury, and she did have a physical harm. The judge discounted the harm because he said she didn't go to hospital, and she only received remedies or medical at home. And I think the precedent of this Court has held that once we show that a person suffered physical harm that has even a permanent scarring, which is what happened in this case, is sufficient to constitute persecution. And I believe that also the Court and the immigration judge has completely ignored the fact that there was an attempt to rape Petitioner as she was dragged off the bus. The judge found that the harm she suffered was not persecution as a matter of law, and I don't think that is what this precedent or what this Court has held. And in the event that this Court does not found that the harm she suffered amounts to past persecution, then at least she has a well-founded view. She's a member of two disfavored groups in this Court. She's a Chinese, and she's also a Christian. So I would respect the request that this Court remands it back with instruction that she has a burden for filing a timely asylum application as right of the ineffective assistant, that she did suffer past persecution, and she at least has a well-founded view upon her reach. Thank you, Your Honor. You have three minutes for rebuttal. Thank you. Good morning again, Your Honor. It's John Williams on behalf of the government. You know, while this is unfortunate that Petitioner suffered from as a victim of generalized crime in 1998, she remained in the country. She was able to remain in Indonesia for two years until 2001 without incident. Nothing happened. She continued to work. She remained there. Nothing further happened. Both the immigration judge and the board found no past persecution, and that she did not establish a clear probability of future persecution. Per the statute and this Court's case law, because her application was untimely, this Court lacks jurisdiction to review the asylum application. But even if we find it was timely, the victory is pyrrhic? I'm sorry, Your Honor. I said even if we find that they were wrong on the untimely, that at least equity demands it be accepted, then you would say that her victory is pyrrhic. She's won but lost. She won the battle and lost the war. That's what you're saying, isn't it? Isn't that what you want us to do if we don't agree with your first premise, that it was timely? Well, the government doesn't agree that it was timely, and I'll go through that. But if it was timely, she didn't show past persecution, so correct. Counsel, you're not saying that we don't have jurisdiction to consider whether it was timely or not. When there is a question of fraud, I think that's an important issue in this case, and you need to be able to say more than we don't have jurisdiction. Okay. And I do have more. And that is that there were two steps that was required under this court's case law, Ramadan, that the petitioner needed to show, and she did not establish that this was, she argued that it was an extraordinary circumstances, and that's a discretionary determination. Here, it requires a prerequisite that the relevant facts must be undisputed historical facts, with regard to what she's arguing. That's the first question, correct? Correct. And here, is there any... And they are there in dispute. What is the dispute? The dispute is that petitioner was arguing, she makes the claim that the individual, Muhammad, was an attorney, and the immigration judge found that he was not an attorney. Now, she goes, steps back, and she says, well then, he was a notario, but the immigration judge found that he was actually just an interpreter. Does that make a difference? If he claimed that he was, in effect, a notario? Well, but that's a disputed fact. Because that's not what the immigration judge... But she's not asking... It makes a difference, because it's a disputed fact, and this court requires under Ramadan that there be undisputed historical facts. My understanding is, if you look at the historical facts, and then you ask the legal conclusion here, what's her application, has she shown extraordinary circumstances? And she has not. So here, if you look at... I thought what the historical facts showed was that she went to this fellow who was not a lawyer. She knew he was not a lawyer. She understood he wasn't a lawyer. Retained him anyways, because she found his name in the paper. She retained him to file an application to get an extension on her visa. An asylum application. And to get an extension on her visa. Because I understood what happened. And she paid him $1,100? $1,300. And he didn't do it. And then she goes out and gets a lawyer. And it's late by this time. So when the lawyer actually files the asylum application, it's about three months late, if I remember correctly. Now, I don't see... So the question then is, well, does that amount... And she claims that there was a fraudulent misrepresentation there. That the notario would... That the consultant would do what he promised to do, file the asylum application, where they said he was going to do it. He didn't do it. That's part of the disputed facts. What she demonstrated was that he would file an application to extend the visa. And in fact, he did. There was no evidence that the interpreter, as the immigration found him to be, agreed to file an asylum application. Well, she testified that that's what she had retained him for. And the IJ found her credible, correct? He found her credible only as to her testimony regarding her allegation of past persecution. So he didn't find her credible in other respects? Not as to the notario. As to this individual. And... If he doesn't find her incredible, we assume her to be credible. Did he make any finding that she was not credible? He made the finding as to her testimony regarding the interpreter here. What did he say? He found that her testimony regarding... That he did not believe her testimony regarding the agreement as to the interpreter. Do you have the transcript site there? I don't have the transcript site in front of me, Your Honor. But let me just address a couple more facts, though. Because here again, she came to this country with a tour group to do some sightseeing. Once she got here, she talked to a friend later on who said, hey, you may want to look into filing an asylum application. Because the friend told her, you need to find an attorney. And she said, I have this interpreter. And the friend told her, no, you need to go to an attorney to file an asylum application. And this was her testimony. That she knew that she needed to hire an attorney to file an asylum application. And that's why she ultimately did. What's that got to do with credibility? I want to know. He didn't believe that? Well, this goes to a... This is a disputed fact. As to whether or not she knew and, in fact, had made an agreement with this interpreter. Well, let me ask you this. Did the government's lawyer present any evidence contrary to that? For what she testified? The, well, the... Usually when you think about... This is what the immigration judge... When you think about a dispute over the facts, there are usually two versions. If you look at the... If you read the transcript, there's two versions. Somebody testifies to X, Y, and Z. And then somebody else comes up and testifies to A, B, and... A, B, C, and D. The trier of fact then has to decide what the facts are. That's not what I understood happened here. I may be... The... The government didn't bring in any evidence and say, well, this is the real story. No, it was... I mean, this was based on her testimony. Right. And significant to that, as I understood the record here, she was deemed credible. So you take her testimony as true. And that means you've got a set of historical facts. And then the legal question then is, does that, what she told, her story, does it add up to extraordinary circumstances under the regulation? I want to... This question about fraud is interesting. Because under the regulation, the I.J. treated it as though she was claiming ineffective assistance of counsel. Sort of pigeonholed it into that category. But, you know, the regulation that we're dealing with here talks about those circumstances may include but aren't limited to the following. And then it gives a series of examples, one of which is ineffective assistance of counsel. But why couldn't... Why doesn't the possibility... Why isn't there, you know, in this particular circumstance, where she went out, sought help, you know, was cheated? Why doesn't that also fit within those categories? It... Because she made a fatal mistake in that she never complained. She never submitted a complaint to the Bar Association or to the Consumer Protection. The Bar Association had a lawyer. She never made a complaint. And she testified that this is what she hired him to do. So, which was only to file the application... No, but look, you're back to pigeonholing this into ineffective assistance of counsel and all the board's decisions with respect to Lozada, which clearly fall within ineffective assistance of counsel. I guess you could say, well, analogously, if you're dealing with these notarios, she should have filed a complaint with the Consumer Protection Agency. And that... And, again, notario was not what the immigration judge found this individual to be. It was an interpreter. That was the adjective. I'm just using that loosely. I understand, but that... Call it an interpreter. Call it a... Call him a consultant, notario for a convenient term that's frequently used in the case law in this circumstance. This comes into play because her claim in quote was that he was, in the petitioner's brief, was that he was a legal specialist. They could call him a legal specialist. But that's not her testimony, and that's not what the immigration judge found. You wouldn't read this regulation as being all-inclusive, would you, the way I just read it to you? No. So there's other circumstances, correct? Correct. I'm very interested in your claiming that there's a credibility, lack of credibility finding in respect to all of this. Well, what the immigration judge said was that he did not find her testimony regarding the information reliable, that what she said, that she had hired this notario to, in fact, prepare an asylum application. I'd like you to get the transcript because that's an important part of this. Okay. The petitioner on page AR 189 of the administrative record, which is part of the 188, 189, which is part of the immigration judge's decision, after consideration of respondents' testimony, I conclude that she has not established an exception to the one-year filing. And then on 189, he reviews the fact that the claim should be compared with the respondent's initial testimony that she actually informed the counselor officer in Jakarta that she was coming to the United States to apply for asylum. Her testimony was inconsistent on this point because she later testified that, in fact, she did not come to the United States for asylum. This is on a completely different point. Well, this goes to ‑‑ I know, but, counsel, you told us that in respect to what the notario did, that he did not find her testimony credible. Well, not reliable. Well, where's that? In our brief, we had dropped a footnote that the ‑‑ We're trying to understand whether the historic facts stand up. And I would concede, I would say that they don't, that the facts are muddled and that they're in dispute as to whether she ‑‑ But you haven't told me that the I.J. said that. Well, the I.J. What's your footnote in your red brief telling us? What page? Page 32. Page 32, okay. The immigration judge had considered her reversal of testimony regarding what she told the counselor official was her reason for coming to the United States from seeking to apply for asylum to tourism. Well, that's still a different point. Well, okay, Your Honor. I was just ‑‑ the government would still propose that she did not satisfy the requirement, the jurisdictional requirement under Ramadan for the court to have jurisdiction on the one‑year bar. And Lopez does not support the petitioner's claim because it relied, again, on the detriment that Noel was an attorney in that case. And Noel would assist Lopez in filing the asylum application again. Petitioner did not demonstrate those two things in this matter. Well, that might be so. But we were talking about whether we had jurisdiction to consider this. And I wanted to get that cleared up. And I don't think you've really helped us on that. Okay. Well, even assuming that this court has jurisdiction over the asylum application, as I started off, the petitioner did not establish past persecution. Well, for future persecution, if she's seeking asylum, it's not the same ‑‑ it's a lesser standard than under withholding of removal. And the board didn't address that. Well, the board did not. Correct. As to the withholding, again, she didn't meet the bar there as far as withholding and demonstrating clear probability of persecution. You're over your time. Okay. Thank you. I would just ask the Court to dismiss the case in part and deny the petition for review. Okay. Your Honor, the judge did find my client to be a credible witness. He made a statement saying a petitioner has testified in a credible manner to this Court. At no point did he make any implicit adverse credibility finding as to the issue, or even he find the inconsistent statement as to what she said at the counselor. Also, all facts necessary for this Court determination of the ineffective ‑‑ So if we find that we have jurisdiction, and if we find that there is substantial evidence to support the IJ's holding that she didn't qualify for withholding of removal, what happens next? Well, we respectfully request that this Court remands it for discretionary grant if the Court finds that you have jurisdiction under one year, and you find that she has satisfied the exceptional circumstances, then we respectfully request a discretionary grant on the asylum, given she has satisfied her burden as a member of two disfavored groups. And on addition, not just on a well‑founded field, but on past persecution, because she has suffered physical harm that has lasted with a permanent scar. And also, with respect to the fact that she has not complied with the Lozada requirement, Mr. Mowaia is not an attorney, so she cannot file except with the consumer. But ask this Court to relax the requirement because the ineffectiveness has been plain on its face. She has been barred from seeking asylum. She has acted in due diligence to seek somebody to assist her. She didn't know the difference between an attorney and an immigration consultant, despite, you know, that her friend asked her to seek a counsel. She opened the magazine. She saw that advertisement. She saw the gentleman saying, I can assist you. She picked him because he could communicate with her better. He speaks her language. And we do believe, Your Honor, that she has acted in due diligence, contrary to what the immigration judge and the Board has found. Thank you. Okay. Thank you.
judges: Walter, Fletcher B. , Paez